WILLIAM H. AND CAROL A. WAYTS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Wayts v. Commissioner
Docket No. 8090-90
United States Tax Court
T.C. Memo 1992-82; 1992 Tax Ct. Memo LEXIS 87; 63 T.C.M. (CCH) 2032; T.C.M. (RIA) 92082; February 10, 1992, Filed *87 Decision will be entered for petitioners. Micheal K. Shoumaker, for petitioners. James Gehres, for respondent. PAJAK
PAJAK
MEMORANDUM OPINION PAJAK, Special Trial Judge: This case was heard pursuant to the provisions of section 7443A(b)(3) and Rules 180, 181, and 182. (Unless otherwise indicated, all section numbers refer to the Internal Revenue Code for the taxable years in issue, and all Rule numbers refer to the Tax Court Rules of Practice and Procedure.) Respondent determined deficiencies in petitioners' 1986 and 1987 Federal income tax of $ 6,052 and $ 2,143, respectively. The only issue the Court must decide for 1986 and 1987 is whether petitioners' horse breeding and racing operation was an activity engaged in for profit. For convenience, we have combined the findings of fact and opinion. To the extent stipulated, the facts are so found. Petitioners resided in Sheridan, Wyoming, when they filed their petition. During 1986, Mr. Wayts was employed full-time by the Big Horn Coal Company as a miner. During that year, he worked approximately 9 to 15 hours from Monday to Friday and virtually all his weekends breeding and racing quarter horses. Mrs. Wayts *88 was employed full-time as a bookkeeper by a Certified Public Accountant. She worked at least 20 hours a week for petitioners' breeding and racing operation during the years in issue. During 1987, Mr. Wayts was injured and was no longer able to work as a miner. Accordingly, he was able to work nearly every day on breeding and racing horses. Petitioners also researched bloodlines for breeding purposes and planned the horses' entries in various races. Petitioners' income and expenses for the period 1983 through 1989 can be summarized as follows: Gross Horse
Total Horse
Net Horse
Income From
Year
Income
Expenses
Losses
Other Sources
1983
$  2,998
$ 19,376
$ 16,378
$ 43,300
1984
$  1,268
$ 21,713
$ 20,445
$ 45,679
1985
$  5,173
$ 23,368
$ 18,195
$ 48,824
1986
$  7,501
$ 29,570
$ 22,069
$ 52,113
1987
$ 14,790
$ 27,191
$ 12,401
$ 35,573
1988
$  1,324
$ 13,990
$ 12,666
$ 20,292
1989
$  3,271
$ 26,570
$ 23,299
$ 29,739
Section 183(a) states the general rule that if an individual engages in an activity and "if such activity is not engaged in for profit, no deduction attributable to such activity shall be allowed under this chapter except *89 as provided in this section." Section 183(c) defines an "activity not engaged in for profit" as an "activity other than one with respect to which deductions are allowable for the taxable year under section 162 or paragraph (1) or (2) of section 212." The test to determine whether an activity is engaged in for profit is whether the individual is engaged in the activity with "the actual and honest objective of making a profit." Dreicer v. Commissioner, 78 T.C. 642, 645 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983). Although the taxpayers' expectation of profit need not be reasonable, the taxpayer must have entered into the activity, or continued the activity, with the objective of making a profit. Section 1.183-2(a), Income Tax Regs.
The determination of whether the requisite profit objective exists depends upon all the surrounding facts and circumstances of the case. Sec. 1.183-2(b), Income Tax Regs. Greater weight is to be given to the objective facts than to the taxpayers' mere statement of their intent. Sec. 1.183-2(a), Income Tax Regs.
Section 1.183-2(b), Income Tax Regs., provides a list of relevant factors used to determine *90 whether an activity is engaged in for profit. These factors include: (1) The manner in which the taxpayers carried on the activity; (2) the expertise of the taxpayers or their advisers; (3) the time and effort expended by the taxpayers in carrying on the activity; (4) the expectation that assets used in the activity may appreciate in value; (5) the success of the taxpayers in carrying on other similar or dissimilar activities; (6) the taxpayers' history of income or losses with respect to the activity; (7) the amount of occasional profits, if any, which are earned; (8) the financial status of the taxpayers; and (9) elements indicating personal pleasure or recreation. No one factor, nor the existence of even a majority of the factors, is controlling. Rather, it is an evaluation of all the facts and circumstances in the case, taken as a whole, which is determinative. Beck v. Commissioner, 85 T.C. 557, 570 (1985). Petitioners conducted their breeding and racing activities in a business-like manner. Sec. 1.183-2(b)(1), Income Tax Regs. They utilized a separate bank account and maintained a complete and accurate set of books and records with respect to their *91 activities which indicate a profit objective. Pryor v. Commissioner, T.C. Memo. 1991-109 (1991). Substantiation and the reasonableness of the deductions and credits taken on petitioners' returns are not in dispute. Petitioners also made various changes to their operations in order to increase profitability and made use of written contracts with respect to their breeding operations. These factors are indicative of the formality one would expect of persons in business to make a profit. Engdahl v. Commissioner, 72 T.C. 659, 669 (1979). Petitioners had considerable experience in the horse breeding and racing business, but also relied on the expertise of the top professionals in their area. Sec. 1.183-2(b)(2), Income Tax Regs. Specifically, Mr. Wayts had experience as a stable hand, a professional jockey, a rancher, a professional rodeo bareback rider and roper, and as an owner of show horses. In addition, petitioners also hired Mr. Bob Johnson during 1986 and Mr. Ron Massingale during 1987 to train their race horses. Both of these individuals were ranked in the top 50 quarter horse trainers in the nation for the years in question. Petitioners *92 also utilized the services of professional jockeys and a veterinarian who was knowledgeable about racehorses and their problems. Petitioners expended considerable time and effort in developing their quarter horse breeding and racing operations. Sec. 1.183-2(b)(3), Income Tax Regs. Although petitioners only worked part-time at their operation during 1986, this fact changed once Mr. Wayts was no longer employable as a miner. Petitioners' involvement was also dependent on the extent to which they relied on other professionals and outside boarding arrangements. Pryor v. Commissioner, T.C. Memo. 1991-109. Petitioners expected that their horses would appreciate in value. Sec. 1.183-2(b)(4), Income Tax Regs. To the extent petitioners' horses win additional races, they, as well as their offspring, will become more valuable. Petitioners' history of losses with respect to their breeding and racing activities has been due primarily to the unexpected deaths of several of their potentially profitable horses due to accidents and illness, as well as the length of time for a breeding operation to become successful. In fact, section 1.183-2(b)(6), Income Tax Regs., provides *93 in pertinent part that "If losses are sustained because of unforeseen or fortuitous circumstances which are beyond the control of the taxpayer, such as *** disease *** [or] involuntary conversions, *** such losses would not be an indication that the activity is not engaged in for profit." As previously noted, petitioners lost several of their best horses due to unforeseen events, thereby generating higher than expected losses. Finally, we consider section 1.183-2(b)(9), Income Tax Reg., which provides that the element of personal pleasure or recreation associated with the taxpayers' activity is to be taken into account. Petitioners have no children living at home, and they do not consider the horses that they breed or race as pets. Furthermore, petitioners' decision to immediately destroy certain animals and sell others to processing plants is what we would expect from individuals in the business of breeding and racing horses. On this record, we are convinced that petitioners' breeding and racing activities were engaged in for profit. Decision will be entered for petitioners.